AUTHENTICATED FILED COPY

STATE OF WISCONSIN     CIRCUIT COURT     SHAWANO COUNTY

---

WESTERN UNION FINANCIAL SERVICES, INC.,
Successor in interest to INTEGRATED PAYMENT
SYSTEMS, INC.
6200 South Quebec Street
Englewood, CO 80111,

        Plaintiff,

v.

DR. R.C. SAMANTA ROY INSTITUTE OF
SCIENCE AND TECHNOLOGY, INC., a/k/a
S.I.S.T., d/b/a MIDWEST OIL
1206 E. Green Bay Street
Shawano, WI 54166

NAOMI ISAACSON
414 7th Ave, SE #B-104
Minneapolis, MN 55414

KAL GENE GRONVALL
16045 Joplin Ave #3
Lakeville, MN 55044

BRUCE EUGENE SCOTT
Route 1, Box 179
Kilkenny, MN 56052

        Defendants.

FILED
SHAWANO COUNTY
FEB 1 5 2013
BC 2 12:23
SUSAN M. KRUEGER
CLERK OF COURTS

Case No.: 13-CV-40

Classification Code: 30301

---

## SUMMONS

---

THE STATE OF WISCONSIN

To each person named above as a Defendant:

    You are hereby notified that Plaintiff, Western Union Financial Services, Inc., Successor in interest to Integrated Payment Systems, Inc., has filed a lawsuit or other legal action against you. The Complaint, which is attached, states the nature and basis of the legal action.

    Within forty-five (45) days of receiving this Summons, you must respond with a written answer, as that term is used in Chapter 802 of the Wisconsin Statutes, to the Complaint. The

Court may reject or disregard an answer that does not follow the requirements of the statutes. The answer must be sent or delivered to the Court, whose address is Shawano County Courthouse, 311 North Main Street, Shawano, Wisconsin 54166, and the Law Firm of Conway, Olejniczak & Jerry, S.C., Plaintiff's attorneys, whose address is 231 South Adams Street, P.O. Box 23200, Green Bay, Wisconsin, 54305-3200. You may have an attorney help or represent you.

If you do not provide a proper answer within forty-five (45) days, the Court may grant judgment against you for the award of money or other legal action requested in the Complaint, and you may lose your right to object to anything that is or may be incorrect in the Complaint. A judgment may be enforced as provided by law. A judgment awarding money may become a lien against any real estate you own now or in the future, and may also be enforced by garnishment or seizure of property.

Dated this 14th day of February, 2013.

LAW FIRM OF CONWAY, OLEJNICZAK & JERRY, S.C.
Attorneys for Plaintiff

By: _____
Steven J. Krueger

POST OFFICE ADDRESS:
231 South Adams Street
P.O. Box 23200
Green Bay, WI 54305-3200
(920) 437-0476
WI State Bar No.: 1064350
1459041

OF COUNSEL
BRIAN C. GRANT, PLLC
32910 West 13 Mile Road, Suite B-203
Farmington Hills, MI 48334
Telephone: (248) 702-6464

2

AUTHENTICATED FILED COPY

STATE OF WISCONSIN     CIRCUIT COURT     SHAWANO COUNTY

---

WESTERN UNION FINANCIAL SERVICES, INC.,
Successor in interest to INTEGRATED PAYMENT
SYSTEMS, INC.
6200 South Quebec Street
Englewood, CO 80111,

        Plaintiff,

v.

DR. R.C. SAMANTA ROY INSTITUTE OF
SCIENCE AND TECHNOLOGY, INC., a/k/a
S.I.S.T., d/b/a MIDWEST OIL
1206 E. Green Bay Street
Shawano, WI 54166

NAOMI ISAACSON
414 7th Ave, SE #B-104
Minneapolis, MN 55414

KAL GENE GRONVALL
16045 Joplin Ave #3
Lakeville, MN 55044

BRUCE EUGENE SCOTT
Route 1, Box 179
Kilkenny, MN 56052

        Defendants.

FILED
SHAWANO COUNTY
FEB 1 5 2013
SUSAN M. KRUEGER
CLERK OF COURTS

Case No.: 13-CV-__40__

Classification Code: 30301

---

## COMPLAINT

---

NOW COMES the plaintiff, Western Union Financial Services, Inc., Successor in interest to Integrated Payment Systems, Inc., by and through its attorneys, Law Firm of Conway, Olejniczak & Jerry, S.C., and as and for its Complaint against the above-named Defendants, alleges and shows to the Court as follows:

## PARTIES, JURISDICTION, AND VENUE

1. Plaintiff is a foreign corporation that conducts business in the State of Wisconsin.

2. Defendant Dr. R.C. Samanta Roy Institute of Science and Technology, a/k/a S.I.S.T., d/b/a Midwest Oil (hereinafter "Midwest Oil" or "Agent") is, upon information and belief, a foreign corporation that conducts business in the State of Wisconsin. At the time of the events giving rise to this action, Agent was engaged in the sale of commercial products/services, including money orders and money transfers.

3. Defendant, Naomi Isaacson, is upon information and belief, an individual who conducts business in the State of Wisconsin.

4. Defendant, Kal Gene Gronvall, is upon information and belief, an individual who conducts business in the State of Wisconsin.

5. Defendant, Bruce Eugene Scott, is upon information and belief, an individual who conducts business in the State of Wisconsin. (Defendants Naomi Isaacson, Kal Gene Gronvall and Bruce Eugene Scott will collectively be referred to as "Individual Defendants")

6. Jurisdiction is proper in this Court under Wisconsin's general and/or long arm jurisdictional statutes.

7. Venue is proper in this Court as Defendants all conduct business within Shawano County and because the cause of action arose in Shawano County.

## GENERAL ALLEGATIONS

8. Agent entered into an Agreement ("The Agency Agreement") with Plaintiff on or about July 8, 2002, in the form and content attached hereto and incorporated herein by reference as <u>Exhibit A</u>.

9. Under the Agency Agreement, Agent was entitled to sell Plaintiff's money orders and money transfers to the public.

2

10. Pursuant to the Agency Agreement, Plaintiff provided Agent with blank money orders and the equipment and materials necessary to process money order sale transactions and money transfers.

11. Under the Agency Agreement, Agent was required to provide Plaintiff with periodic reports detailing its sales.

12. Under the Agency Agreement, Agent was required to place the funds received from sales of money orders, money transfers, and other miscellaneous fees into a trust account ("the Trust Account") and to hold that money in trust for Plaintiff.

13. Under the Agency Agreement, Plaintiff was entitled to access the Trust Account and to withdraw the sales receipts on a periodic basis.

14. On or about July 8, 2002, the Individual Defendants executed a Personal Guaranty and Indemnity Agreement ("the Guaranty Agreement") in the form and content attached hereto and incorporated herein by reference as Exhibit B, guaranteeing the payment of all sums that Agent is required to tender under the Agency Agreement.

15. The Agency Agreement and the Guaranty Agreement provide that Defendants shall be required to pay for the costs, including reasonable attorney's fees, that Plaintiff incurs in having to enforce the agreements in the event of a default.

16. Plaintiff has conducted an audit of Agent's books and records and discovered that Agent failed or refused to account for at least $117,454.54 (plus accumulated interest and costs) in money order sales receipts and other miscellaneous fees.

17. Neither Agent nor the Individual Defendants were able to account for the unremitted funds ("the Trust Funds").

18. Agent has failed to re-pay the Trust Funds and a balance of $117,454.54 (plus accumulating interest and costs) remains unpaid.

19. Despite the fact that their payment obligations have been triggered under the Guaranty Agreement, the Individual Defendants have failed or refused to satisfy the outstanding balance.

## CAUSES OF ACTION

### COUNT I -- BREACH OF CONTRACT
(Dr. R.C. Samanta Roy Institute of Science and Technology, Inc.)

20. Plaintiff hereby reincorporates and realleges all of the foregoing paragraphs of the Complaint as though set forth in full herein.

21. The Agency Agreement constitutes a valid and binding contract between Plaintiff and Agent.

22. Agent's failure and/or refusal to promptly tender the Trust Funds to Plaintiff constitutes a material breach of the contract.

23. As a direct and proximate result of Agent's breach of the Agency Agreement, Plaintiff has suffered and will continue to suffer losses in the amount of at least $117,454.54, plus interest, costs, and attorney's fees.

### COUNT II -- BREACH OF CONTRACT
(Isaacson, Gronvall and Scott)

24. Plaintiff hereby reincorporates and realleges all of the foregoing paragraphs of the Complaint as though set forth in full herein.

25. The Guaranty Agreement constitutes a valid and binding contract between Plaintiff and the Individual Defendants.

26. The Individual Defendants' failure and/or refusal to pay the amount of the Trust Funds to Plaintiff in light of Agent's failure to tender those funds constitutes a material breach of the Guaranty Agreement.

4

27. As a direct and proximate result of the Individual Defendants' breach of the Guaranty Agreement, Plaintiff has suffered and will continue to suffer losses in the amount of at least $117,454.54, plus interest, costs, and attorney's fees.

### COUNT III -- BREACHES OF FIDUCIARY DUTIES
(Dr. R.C. Samanta Roy, Isaacson, Gronvall and Scott)

28. Plaintiff hereby reincorporates and realleges all of the foregoing paragraphs of the Complaint as though set forth in full herein.

29. Pursuant to the Agency Agreement, Agent acted in a fiduciary capacity to Plaintiff.

30. Pursuant to the Guaranty Agreement, the Individual Defendants acted in a fiduciary capacity to Plaintiff by personally guaranteeing Agent's obligation to tender trust funds.

31. Defendants breached their fiduciary duties to Plaintiff by failing, refusing, or neglecting to perform those duties. Specifically, Defendants failed to hold the Trust Funds in trust for Plaintiff, commingled the funds with their own money, used the funds for their own purposes and/or refused to tender the funds to Plaintiff.

32. As a direct and proximate result of Defendants' breaches of their fiduciary duties, Plaintiff has suffered and will continue to suffer losses in the amount of at least $117,454.54, plus interest, costs, and attorney's fees.

### COUNT IV -- INTENTIONAL MISREPRESENTATION
(Dr. R.C. Samanta Roy Institute of Science and Technology, Inc.)

33. Plaintiff hereby reincorporates and realleges all of the foregoing paragraphs of the Complaint as though set forth in full herein.

34. Agent represented to Plaintiff that it would hold the Trust Funds in trust for Plaintiff, not commingle them, and not use them for its own purposes. The Individual

Defendants further represented that they would guaranty Agent's obligations to tender the Trust Funds to Plaintiff.

35. Defendants made the above representations with the intent to induce Plaintiff to allow Agent to sell money orders to the general public.

36. Plaintiff, in fact, relied upon the above representations in allowing Agent to sell its money orders.

37. Defendants knew that the above representations were false when they made them.

38. As a direct and proximate result of Defendants' fraudulent misrepresentations and Plaintiff's reasonable reliance upon them, Plaintiff has suffered and will continue to suffer losses in the amount of at least $117,454.54, plus interest, costs, and attorney's fees.

39. Pursuant to Wisconsin law, Plaintiff is entitled to receive punitive damages because Agent intentionally, wantonly, and maliciously violated Plaintiff's rights.

## COUNT V -- CONVERSION -- AGENT
(Dr. R.C. Samanta Roy Institute of Science and Technology, Inc.)

40. Plaintiff hereby reincorporates and realleges all of the foregoing paragraphs of the Complaint as though set forth in full herein.

41. Despite demand, Agent has used and retained Plaintiff's Trust Funds wrongfully, without justification, and with full knowledge that the funds belong to Plaintiff.

42. As a direct and proximate result of Agent's conversion of the Trust Funds, Plaintiff has suffered and will continue to suffer losses in the amount of at least $117,454.54, plus interest, costs, and attorney's fees.

## COUNT VI - UNJUST ENRICHMENT
(Dr. R.C. Samanta Roy Institute of Science and Technology, Inc.)

43. Plaintiff hereby reincorporates and realleges all of the foregoing paragraphs of the Complaint as though set forth in full herein.

6

44. Agent has received the benefits of Plaintiff's money orders and Trust Funds, but has not exchanged satisfactory value for them.

45. If Agent is permitted to retain the benefits without exchanging satisfactory value for them, it will be unjustly enriched at Plaintiff's expense in the amount of at least $117,454.54.

WHEREFORE, Plaintiff respectfully demands judgment against the above-named Defendants as follows:

A. For a money judgment against Dr. R.C. Samanta Roy Institute of Science and Technology, Inc., Isaacson, Gronvall and Scott; jointly and severally in the amount of $117,454.54 plus interest;

B. For the costs and disbursements of this action, including actual attorney's fees;

C. For Punitive damages in an amount to be determined by the trier of fact; and

D. For such other and further relief as the Court deems just and equitable.

Dated this 14th day of February, 2013.

LAW FIRM OF CONWAY, OLEJNICZAK & JERRY, S.C.
Attorneys for Plaintiff

By: _____
Steven J. Krueger

POST OFFICE ADDRESS:
231 South Adams Street
P.O. Box 23200
Green Bay, WI 54305-3200
(920) 437-0476
WI State Bar No.: 1064350
1458889

OF COUNSEL
BRIAN C. GRANT, PLLC
32910 West 13 Mile Road, Suite B-203
Farmington Hills, MI 48334
Telephone: (248) 702-6464

7

# WESTERN UNION
A First Data Company

# AGENCY AGREEMENT

This Agency Agreement is entered into between Western Union Financial Services, Inc., a Colorado corporation, whose principal place of business is 6200 South Quebec Street, Englewood, Colorado 80111 ("Western Union") and

__S.I.S.T. dba Midwest Oil__
Company or Individual Name

__Midwest Oil/ Mobil__
DBA Name(s)

__715-526-5400__
Business Telephone Number

__redacted__
IRS Number or Social Security Number

__1206 East Green Bay Street__
Street Address

__Shawano WI 54166__
City, State, Zip Code

__715-526-2003__
Business Facsimile Number

_____
WU Network/Account Number

a __S.I.S.T.__ [X] corporation] [ ] general partnership] [ ] limited partnership] [ ] LLC [ ] sole proprietorship (the "Agent").

1. **The Services; Service Requirements.** Agent will offer for sale to the public all of the Money Transfer Services (as defined below) offered by Western Union from time to time, the other Western Union services specified in any attachment annexed hereto, and such of the other services provided by Western Union as Western Union and Agent may agree upon from time to time (collectively, the "Services") in accordance with all the applicable terms and conditions set forth in Western Union's Agency Reference Guide, Bank Secrecy Act Compliance Manual, operations manuals, user guides, customer forms, record retention schedules, rate schedules and applicable tariffs, policies, rules and regulations, all as may be amended from time to time by Western Union (collectively, the "Service Requirements"). Agent agrees to comply with all of the Service Requirements in effect from time to time. Current copies of the Service Requirements have been provided to Agent by Western Union and will be available upon request from Western Union at any time; in addition, Western Union will provide to Agent copies of any amendments to the Service Requirements as made. As used herein, the term "Money Transfer Services" includes, without limitation, all of Western Union's Domestic Money Transfer services, International Money Transfer services, Mexico Money Transfer services, Quick Collect, Quick Cash (including Benefits Quick Cash), Cash Card, and such other funds transfer or funds disbursement services that Western Union may introduce from time to time.

2. **Advertising; Trademarks.** (a) Agent agrees to advertise and promote the Services so as to develop customer interest and confidence in the Services and to enhance the goodwill associated therewith and with Western Union's trade names, trademarks, trade dress, symbols, logos and copyrighted materials (collectively, "Intellectual Property"). Agent agrees to participate in Western Union's promotional programs, to make prominent use of signs, brochures, displays and other promotional materials provided by Western Union, and to meet Western Union's merchandising standards, attached hereto as Attachment III. Agent may promote the Services in its own advertising or promotional materials in any form of media, including, without limitation, radio, television, print or the Internet, subject to the prior written approval of Western Union. Requests for such approval shall be forwarded to Western Union Financial Services, Inc., Attention: Trademark Administrator, 6200 South Quebec Street, Suite 330, Englewood, Colorado 80111.
(b) Each party is granted the nonexclusive right to use the other party's Intellectual Property for the limited purpose of advertising and promoting the Services, subject in each case to the prior written approval of the party whose Intellectual Property is being used. Each party agrees that use of the other party's Intellectual Property shall not confer any proprietary right thereto in any manner, and each party agrees to cease all use of the other party's Intellectual Property immediately upon termination of this Agreement.
(c) Western Union may periodically inspect Agent's advertising and promotional materials, in all forms of media, relating to the Services for compliance with this Section. If Western Union reasonably considers Agent's use of the Western Union Intellectual Property or depiction of the Services in any such materials to be improper, misleading or otherwise contrary to Agent's obligations under this Section, Agent shall, upon Western Union's request, modify or replace such materials, subject to Western Union's prior written approval, or discontinue the use of such materials.
(d) Neither party may issue press releases or other public notices as to the subject matter of this Agreement without the prior written approval of the other party.

3. **Exclusivity.** (a) Agent agrees that, during the term of this Agreement and, unless this Agreement is terminated for Western Union's breach, for a period of thirty (30) days thereafter, Agent will not act as agent for, represent or offer any other money transfer service or other service similar to any of the Services.
(b) Agent and Western Union agree that all additional locations of Agent, whether newly opened or acquired, will be included as locations under this Agreement as soon as reasonably possible after opening or acquisition, as the case may be, subject to Western Union's prior approval and subject to any existing contractual commitments in the case of acquired locations, it being understood that for this purpose any such commitments will be terminated, canceled or allowed to expire at the earliest possible time consistent with the provisions thereof.
(c) Agent agrees that, if Agent breaches this Section, Western Union's remedies at law will not be adequate, and Western Union will be entitled to specific performance, including appropriate interim injunctive relief.

4. **Locations.** (a) Agent will offer the Services at its locations and during the hours specified in Attachment II, which hours will be conspicuously posted. If circumstances interfere with Agent's hours of operation, Agent will inform Western Union by telephone of the nature and expected duration of such interference and the temporary hours of operation at least five (5) days in advance, circumstances permitting, or in any event as soon as reasonably possible.
(b) Agent shall not change the locations at which the Services are offered without giving Western Union sixty (60) days' prior written notice and without Western Union's prior approval.
(c) Western Union may inspect and audit Agent's performance and provision of the Services at Agent's locations. Upon notice from Western Union of any deficiency, Agent shall correct or diligently endeavor to correct, such deficiency within five (5) business days, subject to the provisions hereof relating to breach.
(d) Agent acknowledges and agrees that Agent is prohibited from appointing any subagents hereunder and shall not offer the Services at or through any entity not a party to this Agreement or at or through any location not expressly included as a location under this Agreement.


PLAINTIFF'S EXHIBIT A

PBC (2000.1)

1

5. **Money Transfer Payments and Payouts.** (a) Agent will not accept any payment for money transfers other than cash or bank cashiers' checks verified with the issuing bank in accordance with the Service Requirements, or, in the case of credit or debit card services, credit or debit cards approved by Western Union from time to time.
(b) Agent shall use its best efforts to pay the principal amount of each money transfer entirely in cash, but in any event, at each location shall pay in cash no less than the minimum cash payout amount specified in Attachment II for that location (or the face amount if less), and shall not impose any fees or charges of any kind upon a money transfer recipient.

6. **Records; Confidentiality.** (a) Records with respect to Western Union's customers and any information or records relating to the Services ("Customer Information") are the property of Western Union and are subject to audit and review by Western Union at any time during normal business hours.
(b) Neither Agent nor its officers, principals or employees shall make any use or disclosure, other than for purposes of its performance under this Agreement or as may be required by law, of (i) Customer Information; (ii) Service Requirements; (iii) security identifications, "bingo cards", account numbers and Western Union's other security measures and procedures; (iv) volumes, revenues, earnings, commission rates or payments hereunder, or (v) other confidential information with respect to Western Union, the Services, this Agreement, or the relationship between the parties.

7. **Equipment; Training.** (a) The equipment to be used by Agent in providing the Services shall be provided by Western Union or, if not provided by Western Union, shall meet Western Union's specifications, and the parties shall make mutually agreeable arrangements with respect thereto. Agent shall have and shall assume the exclusive care, custody, and control of the equipment and shall pay all state and local sales, use, property, business or similar taxes and/or assessments relating to the equipment, and, in connection with the foregoing obligations, Agent agrees to include the equipment on any schedule of equipment or personal property maintained by Agent for sales, use, property, business or similar tax purposes and to file all necessary and appropriate returns in connection therewith. Agent agrees that it shall not use any equipment provided by Western Union for any purpose other than the provision of the Services hereunder.
(b) Agent will provide, in an area reasonably convenient for providing the Services, a telephone handset and a local telephone line (at Agent's expense) and Western Union will make arrangements for transmission facilities to reach Western Union's computer system.
(c) Western Union will train Agent and Agent's designated employees in providing the Services as Western Union deems necessary. Western Union will furnish Agent with all forms necessary for providing the Services (including money transfer checks), and Agent will not use any other forms.

8. **Safekeeping and Liability for Loss; Trust Relationship.** (a) Agent assumes full responsibility and liability for all monies (including, without limitation, money transfer principal and fees) received by Agent, its officers, principals or employees in connection with the provision of the Services under this Agreement (the "Western Union Funds") and all money transfer checks received by Agent, its officers, principals or employees.
(b) Agent agrees to indemnify and hold Western Union harmless from any claims, losses, damages, liabilities or expenses due to or arising out of loss, misuse, theft, burglary, forgery, robbery or other crime, destruction, mysterious disappearance and all other causes of loss with respect to the Western Union Funds and the money transfer checks (including, without limitation, the receipt of counterfeit currency or checks).
(c) Agent agrees to hold the Western Union Funds and the money transfer checks in trust as a fiduciary for the sole and exclusive use and benefit of Western Union and shall maintain and account for the Western Union Funds separate and apart from all other funds and monies of Agent. Agent agrees that, in the event Agent commingles Western Union Funds with any other funds, such other funds shall be impressed with a trust to the extent of the Western Union Funds.
(d) Agent agrees to pay all Western Union Funds to Western Union upon demand regardless of the presence or absence of negligence of Agent, Western Union or any other person.

(e) Except as expressly set forth herein, it is understood that Agent does not by operation of this Agreement or otherwise acquire any right, title or interest of any kind in the Western Union Funds or the money transfer checks. All Western Union Funds and money transfer checks remain the sole and exclusive property of Western Union.
(f) Agent acknowledges that Western Union shall have the right to establish, from time to time and in its sole discretion, both daily and single transaction limits relating to the number and principal amount of transactions that may be transacted through Agent's locations.

9. **Indemnification; Limitation of Liability.** (a) Western Union will indemnify and hold Agent harmless from and against any claims, losses, damages, liabilities or expenses (including reasonable attorneys' fees) arising out of or resulting from any mishandling, delay, non-delivery or other errors or omissions concerning the Services and caused by Western Union prior to transmission to Agent or after acceptance from Agent and not attributable to the acts or omissions of Agent, its officers, principals, or employees.
(b) Agent will indemnify and hold Western Union harmless from and against any claims, losses, damages, liabilities or expenses (including reasonable attorneys' fees) arising out of or resulting from the acts or omissions of Agent, its officers, principals or employees, or in connection with Agent's provision of the Services under this Agreement, including without limitation, losses resulting from or related to (i) any failure to adhere to the Service Requirements (including, without limitation, any payments of money transfers to other than the intended recipients, in excess of the authorized amount, or resulting from any failure to mark the transaction as paid out in the "Will Call File"), (ii) any other breach of the terms and provisions of this Agreement, (iii) any negligence or intentional misconduct committed by Agent, its officers, principals or employees, or (iv) any claims of premises liability involving any of Agent's locations.
(c) NOTWITHSTANDING ANYTHING IN THIS AGREEMENT TO THE CONTRARY, WESTERN UNION'S TOTAL LIABILITY TO AGENT UNDER THIS AGREEMENT SHALL BE LIMITED TO A MAXIMUM OF ONE HUNDRED THOUSAND DOLLARS ($100,000.00) IN ACTUAL DAMAGES SUFFERED BY AGENT, AND IN NO EVENT SHALL WESTERN UNION, ITS AFFILIATES, DIRECTORS, OFFICERS, EMPLOYEES OR AGENTS BE LIABLE TO AGENT UNDER ANY THEORY OF TORT, CONTRACT, STRICT LIABILITY OR OTHER LEGAL OR EQUITABLE THEORY FOR LOST PROFITS OR PUNITIVE, EXEMPLARY, SPECIAL, INCIDENTAL, INDIRECT, CONSEQUENTIAL OR SIMILAR DAMAGES, EACH OF WHICH IS HEREBY EXCLUDED BY AGREEMENT OF THE PARTIES REGARDLESS OF WHETHER OR NOT SUCH PARTY HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.

10. **Remittance of Western Union Funds.** (a) Agent hereby designates M & T Bank (Bank) Shawano WI (City, State) as the financial institution (the "Bank") which will hold the account into which Agent will deposit the Western Union Funds (the "Account"). Agent will deposit all Western Union Funds into the Account no later than 10:00 a.m., local time at the place of deposit, on the business day following receipt thereof. Agent agrees that it will, and that it will request and direct the Bank to, provide to Western Union all such Account activity and balance records and information as may be from time to time requested by Western Union. Agent will provide Western Union with fourteen (14) days advance written notice prior to changing the Account in any manner.
(b) In the event that Agent fails to pay Western Union in accordance with the foregoing, Western Union may, in its sole discretion, do any one or more of the following: (i) demand immediate wire transfer of all Western Union Funds, (ii) immediately suspend or terminate Agent's ability to provide the Services at any one or more of Agent's locations, (iii) immediately terminate this Agreement, (iv) exercise any legal and/or equitable remedies available to Western Union, for which it shall be entitled to reimbursement of reasonable attorney's fees and expenses, (v) satisfy the amount owed by offset against any funds which may be due and owing to Agent hereunder, and/or (vi) assess a late charge on the amount of the payment due for each day Agent fails to make such payment equal to the greater of $25.00 or interest on the

2

PBC (2000.1)

amount of such payment at the rate of two percentage points (2%) above the Prime Rate in effect at that time.

11. **Payments to Agent**. Western Union will pay to Agent, as described in Attachment I, monthly fees and commissions, as consideration for and subject to Agent's performance of its obligations hereunder. In addition, based on Agent's performance, service and volume attainments, Agent may earn additional compensation under Western Union's Performance Based Compensation Program as described in Attachment I.

12. **Insurance**. Agent has obtained and will maintain the following insurance coverages, on forms of policies and underwritten by companies acceptable to Western Union, with limits no less than those specified: (i) Workers' Compensation - Statutory limits; (ii) Employer's Liability: $100,000 per occurrence; (iii) Comprehensive General Liability: $1 million per occurrence (combined single limit) for bodily injury and property damage; and (iv) Fidelity and/or Blanket Crime Insurance: $200,000 per location covering employee dishonesty, forgery, robbery, burglary, misplacement and similar occurrences. Each such policy shall name Western Union as an additional insured thereunder and shall prohibit cancellation without thirty (30) days' prior notice to Western Union, and shall be primary and without right of contribution from any insurance maintained by Western Union. Western Union will have the right to collect directly under any applicable coverage for any deficiency in payment of Western Union Funds to Western Union. The obligation of Agent to maintain insurance hereunder shall not relieve Agent of any of its other obligations hereunder, including those of indemnity.

13. **Financial Statements**. Upon request by Western Union from time to time, Agent will promptly provide to Western Union current annual or interim financial statements certified by Agent's independent auditors or otherwise as may be acceptable to Western Union.

14. **Compliance with Law**. (a) Agent agrees to comply (and to cause its officers, principals and employees to comply) with all applicable federal and state laws and regulations in connection with its provision of the Services, as the same may be amended from time to time, including but not limited to the Bank Secrecy Act and the rules and regulations promulgated thereunder and all applicable state money transfer or sale of checks laws and regulations (including those laws and regulations referred to or set out in Schedule A, if any).
(b) Agent represents and warrants on its own behalf and on behalf of its officers, principals and key employees that (i) none of them has been convicted of any felony, except as may have been disclosed to Western Union in writing prior to the execution of this Agreement, and (ii) none of them has ever been charged with or convicted of (or plead guilty or no contest to) any criminal act constituting, involving or relating to: fraud; embezzlement; theft; money laundering; receipt of stolen property; or the possession, use, manufacture or distribution of any narcotic or other controlled substance. This representation and warranty shall be deemed an ongoing representation and warranty from Agent so long as this Agreement remains in force. Agent shall provide notice to Western Union within forty-eight hours in the event that any of the foregoing representations or warranties shall cease to be true at any time during the term of this Agreement.
(c) As a government contractor within the meaning of Executive Order 11246, Western Union must require its Agents to set forth their obligations pertaining to nondiscrimination in employment and nonsegregation of facilities. Agent hereby certifies that Agent will not discriminate against any employee or applicant for employment because of race, color, religion, sex, national origin or age.
(d) If Agent breaches any provision of this Section, Western Union may, in its sole discretion, immediately suspend Agent's ability to provide the Services at any one or more of Agent's locations, or immediately terminate this Agreement, or both.

15. **Other Western Union Relationships**. Agent represents and warrants that it has disclosed to Western Union in writing all ownership or other interests that Agent, its affiliates, officers or principals may have in any other Western Union agent or agency.

16. **Term; Termination; Early Termination Fee**. (a) This Agreement shall commence on the date that this Agreement is executed by Western Union (the "Effective Date") and continue in force for a period of five (5) years (the "Initial Term"), unless otherwise terminated as provided herein. Upon the expiration of the Initial Term, this Agreement shall continue in effect unless either party shall have given the other party at least twelve (12) months prior written notice of termination. Either party may terminate this Agreement at any time after the Initial Term by giving the other party at least twelve (12) months prior written notice of termination.
(b) Except as otherwise expressly provided herein, in the event of any breach of this Agreement by either party, the non-breaching party may give notice of such breach to the breaching party and, on or after the 20th calendar day following such notice of breach, unless such breach has been cured within the 20-day period, may terminate this Agreement immediately upon giving notice of termination to the breaching party. In the event of a breach of this Agreement by Agent, Western Union reserves the right to suspend Agent's ability to provide for the Services until such time as the breach has been cured by Agent in accordance with this Subsection.
(c) Notwithstanding any other provision of this Agreement to the contrary, Western Union may immediately terminate this Agreement or any location covered by this Agreement in the event that (i) Western Union determines, in its sole discretion, that compliance with this Agreement would cause Western Union or any of its affiliates to violate or potentially violate any local, state or federal law or regulation or any court order; (ii) any representation made or information provided to Western Union by Agent was false or misleading at the time of such disclosure; and/or (iii) Agent defaults under any other material contract, obligation or debt of Agent, specifically including, but not limited to, any agreement relating to the sale of money orders.
(d) In the event that (i) this Agreement is improperly terminated by Agent prior to the expiration of the Initial Term, or (ii) this Agreement is terminated prior to the expiration of the Initial Term due to a breach hereof by Agent, then, in addition to any other remedies contained herein or otherwise available to Western Union, Agent shall pay Western Union, upon demand, an amount equal to the average monthly consumer fees collected by Agent during the ninety (90) days preceding termination less the actual commissions and bonuses paid to Agent during such ninety (90) day period, multiplied by the number of months (including any pro rata portion of a month) then remaining in the Initial Term of the Agreement. Agent acknowledges and agrees that the amount calculated in the manner specified above is a reasonable estimate of Western Union's probable damages in the event of such termination and does not constitute a penalty.

17. **Termination Responsibilities**. Immediately upon termination of this Agreement, or in the event of the closure of one of Agent's locations, with respect to that location, Agent will (i) stop presenting itself to the public as providing the Services, (ii) make no use of Western Union's Intellectual Property or Customer Information, (iii) refer all calls and customers intended for Western Union to telephone numbers and locations specified by Western Union and will not divert any such calls or customers to a Western Union competitor nor disparage Western Union or its Services, (iv) at Agent's sole cost and expense, return to Western Union all of the following: all unused money transfer checks; all state money transfer licensing materials (if any); all Customer Information and all information and materials of any type relating to Western Union's security measures and procedures; any equipment and software which is the property of Western Union, which shall be delivered to Western Union in good repair and condition, reasonable wear and tear excepted; and all other items that Western Union has provided to Agent, (v) at Agent's sole cost and expense, remove and (at Western Union's election) deliver to Western Union or dispose of all signs, displays and other materials containing the Western Union name or logo (or will permit Western Union to do so at Agent's sole cost and expense), (vi) render a full accounting to Western Union for all money transfer checks furnished to Agent, all Services transacted through Agent and all Western Union Funds, and (vii) pay to Western Union any other amounts that may be due to Western Union in accordance with the terms of this Agreement. In addition, Western Union will provide to Agent a 12" by 18" notice displaying Western Union telephone numbers and the names, addresses and telephone numbers of locations where Western Union services are available, and Agent will post such notice and keep it posted in a conspicuous location for a period of ninety

3

PBC (2000.1)

Case 2:13-cv-00551-WCG   Filed 05/15/13   Page 12 of 18   Document 1-7

(90) days following the termination of this Agreement. Upon any termination hereof, Western Union may instruct the local telephone company to remove Agent's locations from the Western Union listings in any telephone directory records.

18. **Assignment.** (a) This Agreement may not be assigned or transferred by Agent without the prior written consent of Western Union. Agent agrees to give Western Union no less than sixty (60) days' notice of any proposed assignment or transfer of Agent's principal business. For purposes of this Section, any change in control or ownership of Agent shall be deemed to be an assignment.
(b) In no event shall the Agent sell, assign or otherwise transfer all or substantially all of the assets used in connection with its business operated at one or more of the locations covered by this Agreement, unless the purchaser, assignee or transferee thereof assumes this Agreement and all of the provisions and obligations of the Agent hereunder with Western Union's prior written consent. In no event shall Agent be relieved of its liability to Western Union or any of its other obligations arising hereunder unless and until such purchaser, assignee or transferee expressly assumes such liability with Western Union's prior written consent.
(c) This Agreement will inure to the benefit of Western Union, its successors and assigns.

19. **Notices.** All notices hereunder shall be in writing and shall be deemed given when personally delivered, or when sent by facsimile transmission with receipt confirmed, or three business days after being mailed by certified mail, return receipt requested, in each case directed, if to Agent, to its address as shown on the face hereof, to the attention of the representative or party signing this Agreement, and, if to Western Union, to Western Union Financial Services, Inc., 6200 South Quebec Street, Englewood, Colorado 80111, Attention: Vice President, Agent Network Management, or to such other addressee or address for either party as is specified by such party in a notice given to the other.

20. **Waiver of Jury Trial; Personal Service of Process.** (a) EACH PARTY HEREBY IRREVOCABLY WAIVES ANY RIGHTS THEY MAY HAVE TO A TRIAL BY JURY IN ANY JUDICIAL PROCEEDING RELATING TO THIS AGREEMENT.
(b) AGENT HEREBY ADDITIONALLY WAIVES PERSONAL SERVICE OF PROCESS AND CONSENTS THAT SERVICE OF PROCESS UPON IT MAY BE MADE BY CERTIFIED OR REGISTERED MAIL, RETURN RECEIPT REQUESTED, AT THE ADDRESS PROVIDED IN SECTION 19 HEREOF.

21. **Other Provisions.** (a) This Agreement is the entire understanding between the parties and supersedes all other agreements and understandings between them. It may not be changed orally; it can be amended only by a written document signed by authorized representatives of the parties.
(b) No failure of either party to require performance by the other of any provision hereof shall be construed to be a modification of this Agreement or a waiver of any succeeding breach.
(c) Agent has full power and authority to enter into this Agreement, and the execution, delivery, and performance by Agent of this Agreement will not constitute a default (or an event which, with notice or lapse of time or both, would constitute a default) under any contract or agreement to which Agent or any of its affiliates is a party, or require consent or approval from any other party to any such contract.
(d) Should any provision of this Agreement be deemed unenforceable, the remaining provisions will nonetheless continue in effect. This Agreement will be governed by and interpreted under the laws of the State of Colorado.
(e) The attachments, schedules and annexes to this Agreement are incorporated herein by reference, and shall be deemed to be part of this Agreement for all purposes, and all terms defined herein have the same meanings in the attachments.
(f) Any provisions of this Agreement which are to be performed after termination to effectuate their intent and purpose shall survive termination of this Agreement.
(g) Nothing in this Agreement shall be construed to constitute either party as a partner, employee or (except for the limited purpose defined herein) agent of the other, and no employee or agent of either party shall be deemed to be the employee or agent of the other. Neither party shall have the authority to make any agreement or commitment, nor incur any liability on behalf of the other, nor be liable for any acts or omissions of the other, except as specifically provided herein.
(h) In the event this Agreement references more than one person, corporation, partnership or entity as Agent, then it is expressly agreed that the liability of such persons or entities hereunder shall be both joint and several.

IN WITNESS WHEREOF, the parties have signed this Agreement to be effective as of the Effective Date.

**AGENT**

By: *Naomi Isaacson* (Signature)

Name: Naomi Isaacson (Type or Print)

Title: C.E.O.

Date: July 8, 2002

**WESTERN UNION FINANCIAL SERVICES, INC.**

By: *[signature]* (Signature)

Name: Daniel Alsop (Type or Print)

Title: Sr. Financial Credit Mgr.

Effective Date: 7/15/02

Case 2:13-cv-00551-WCG    Filed 05/15/13    Page 13 of 18    Document 1-7

# AGENCY AGREEMENT
# WESTERN UNION FINANCIAL SERVICES, INC.

## ATTACHMENT I

## PERFORMANCE BASED COMPENSATION PROGRAM

I. The Performance Based Compensation Program for Agents (the "PBC Program") comprises three tiers:

   A. Tier I - Base Transaction Commissions:
   Western Union will pay to Agent base commissions for Western Union transactions processed by Agent as follows (collectively, "Base Transaction Commissions"):

   i. Consumer Money Transfer Transactions: Agent's commission for money transfers sent or paid by Agent will be 10% of the consumer fee actually paid by the money transfer sender. (For credit card money transfers paid by Agent, Agent's commission will be 10% of the consumer fee actually paid by the money transfer sender after deducting the transaction premium charged for this service.) For transactions originating outside the United States, Agent's commission will be paid in United States dollars in accordance with Western Union's settlement and currency conversion arrangements with the originating international agent. The commissions described in this subparagraph are referred to as "Consumer Money Transfer Base Transaction Commissions."

   ii. Other Transactions: Agent's commission for each Quick Cash money transfer paid will be $2.00. Agent's commission for each Quick Collect money transfer sent will be $2.00. Agent's commission for each Cash Card payout or Cash Card verification of available funds will be $0.50.

   B. Tier II - Performance Bonus*:
   Western Union will pay to Agent a bonus based on attainment by Agent's locations of certain performance criteria, as described in Western Union's Performance Based Compensation Program Description (the "PBC Program Description"), a copy of which has been provided to Agent (the "Performance Bonus"). Under the Performance Bonus provisions of the PBC Program, depending upon whether and the degree to which Agent meets the applicable criteria specified by Western Union for Agent's type of business from time to time, Agent will have the right to earn a percentage bonus based upon Agent's Consumer Money Transfer Base Transaction Commissions as set forth in the PBC Program Description in effect from time to time.

   C. Tier III - Volume Bonus*:
   Western Union will pay to Agent a bonus based on the attainment by Agent's locations of certain transaction volume levels for certain services, as more fully described in the PBC Program Description (the "Volume Bonus"). Under the Volume Bonus provisions of the PBC Program, depending upon whether and the degree to which Agent meets the applicable criteria specified from time to time, Agent will have the right to earn a percentage bonus based upon Agent's Consumer Money Transfer Base

PBCATT (2000.1)

# AGENCY AGREEMENT
# WESTERN UNION FINANCIAL SERVICES, INC.

Transaction Commissions as set forth in the PBC Program Description in effect from time to time.

II. Calculation; Payment; Reports:

Agent's compensation for each of Agent's locations for each calendar month shall consist of Agent's Consumer Money Transfer Base Transaction Commissions and Performance Bonus and Volume Bonus, if any, for each location. Western Union will pay Agent's compensation monthly in the month following the calendar month in which it is earned. Western Union will supply supporting reports to indicate the basis for each location's calculation and to summarize monthly performance results.

III. Modifications to PBC Program Performance and Volume Criteria; Minimum Bonus Payments:

It is understood that Western Union may in its sole discretion change the performance criteria and/or transaction volume levels required to qualify for the Performance Bonus and the Volume Bonus, respectively. Any such change notwithstanding, however, Western Union agrees that the Performance Bonus payments and the Volume Bonus payments made by Western Union to all Western Union Agents participating in the PBC Program in any calendar year shall not be less than 5% and 15%, respectively, of the Consumer Money Transfer Base Transaction Commissions paid by Western Union to all Western Union Agents who participated in the PBC Program during such calendar year. If at the end of any calendar year the Performance Bonus payments fall below the 5% minimum, Western Union will, within 45 days after the end of such calendar year, pay to each Agent who earned a Performance Bonus a share of the amount by which the total Performance Bonus payments made by Western Union for such year fell short of the 5% minimum, pro rata in proportion of such Agent's percentage of the total Performance Bonus payments for such year. If at the end of any calendar year the Volume Bonus payments fall below the 15% minimum, Western Union will, within 45 days after the end of such calendar year, pay to each Agent who earned a Volume Bonus a share of the amount by which the total Volume Bonus payments made by Western Union for such year fell short of the 15% minimum, pro rata in proportion to such Agent's percentage of the total Volume Bonus payments for such year. It is further understood that no such change will affect Agent's rights to receive amounts already earned.

*Performance Bonuses and Volume Bonuses are paid as described in the Performance Based Compensation Program Description in effect from time to time.

Note: money transfer principal is not included in the calculation of Agent commissions.

PBCATT (2000.1)

# AGENCY AGREEMENT
# WESTERN UNION FINANCIAL SERVICES, INC.

## ATTACHMENT II

## AGENT LOCATION(S), HOURS OF OPERATION
## MINIMUM CASH PAYOUT PER TRANSACTION

1. Address: 1206 East Green Bay Street

   Shawano WI 54166

   Business Name: Midwest Oil

   Telephone Number: 715-526-5400

   Minimum Cash Payout: $500.00

   Hours of Operation:  Mon.: _____   Fri.: _____
   open 24 hrs/day      Tue.: _____   Sat.: _____
                        Wed.: _____   Sun.: _____
                        Thu.: _____   Hol.: _____

2. Address: _____

   Business Name: _____

   Telephone Number: _____

   Minimum Cash Payout: _____

   Hours of Operation:  Mon.: _____   Fri.: _____
                        Tue.: _____   Sat.: _____
                        Wed.: _____   Sun.: _____
                        Thu.: _____   Hol.: _____

[Please use additional sheets if necessary]

PBCATT (2000.1)

# PERSONAL INDEMNITY AND GUARANTY

In order to induce Western Union Financial Services, Inc., ("Western Union") to enter into that certain Agency Agreement ("Agreement") and in consideration thereof and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the undersigned personally, individually, jointly and severally guarantees to Western Union the prompt payment in full by Agent (as defined in the Agreement) of all sums and amounts payable under the Agreement and the prompt and complete performance by Agent of all other obligations thereunder.

Each of the undersigned agrees, without Western Union's first having to proceed against Agent, to pay on demand all sums due and to become due to Western Union under the Agreement and all damages, losses, costs, attorney's fees and expenses which Western Union may suffer by reason of Agent's or any of our failures to pay or perform any obligation under the Agreement. This guaranty is an absolute, unconditional and continuing guaranty of payment under the Agreement and all substitutions or replacements thereof.

Western Union may at any time and from time to time, without the undersigned's consent, and without affecting or impairing the obligation of any of the undersigned hereunder, take any action with respect to, or waive or amend any of the obligations of the Agent, including without limitation, any of the following: (i) renew or extend any obligations of Agent or of co-guarantors (whether hereunder or under a separate instrument) or of any other party at any time directly or contingently liable for the payment of said obligations without limit as to the number or extent of said obligations; (ii) accept partial payment of said obligations; (iii) settle, release (by operation of law or otherwise), compound, compromise, collect or liquidate any of said obligations and the security or collateral therefor, if any, in any manner; or (iv) consent to the transfer of, or release from time to time, security or collateral, if any. No payment by a guarantor hereunder shall entitle the guarantor, by subrogation or otherwise, to any payment by Agent or out of the property of Agent except after the full payment and performance by Agent of all indebtedness, obligations and liabilities to Western Union.

No termination hereof shall be effected by the death of any or all of the undersigned. Each of the undersigned waives notice of acceptance hereof and presentment, demand, protest and notice of nonpayment and any other demands and notices whatsoever. This guaranty shall bind our respective heirs, administrators, personal representatives, successors and assigns, and shall inure to Western Union's successors and assigns. All of Western Union's rights are cumulative and not alternative. All capitalized terms used but not otherwise defined in this Personal Indemnity and Guaranty shall have the meanings given to such terms in the Agreement.

Permission and authorization is hereby granted to Western Union, as well as to prior employers, trade references, Dun and Bradstreet, banks or local consumer credit services, to verify, receive, exchange and obtain business and/or personal credit information as part of the application and approval process for Agent to become approved by Western Union to sell Money Transfer Services, or at any time thereafter in connection with Western Union's ongoing credit evaluation of Agent or the undersigned and/or the collection of any obligation arising from the Agreement or the business relationship evidenced thereby, including this Personal Indemnity and Guaranty.

THE UNDERSIGNED HEREBY IRREVOCABLY WAIVE ANY AND ALL RIGHTS THEY MAY HAVE TO A TRIAL BY JURY IN ANY JUDICIAL PROCEEDING INVOLVING ANY CLAIM RELATING TO THIS GUARANTY.

IN WITNESS WHEREOF, the undersigned have executed the foregoing Guaranty.

Guarantor Signature _Naomi Isaacson_  Print Name __Naomi Isaacson__
Date __7-8-02__  Social Security Number ____ redacted
Drivers License Number ____ redacted  Address __414 7th Ave SE #B104 Minneapolis MN 55414__

Guarantor Signature _Kal Gronvall_  Print Name __Kal Gronvall__
Date __7-8-02__  Social Security Number ____ redacted
Drivers License Number ____ redacted  Address __16045 Joplin Ave #3 Lakeville MN 55044__

Guarantor Signature _Bruce Scott_  Print Name __Bruce Scott__
Date __7-8-02__  Social Security Number ____ redacted
Drivers License Number ____ redacted  Address __Rt. 1 Box 179, Kilkenny MN 56052__

PLAINTIFF'S EXHIBIT B

# AGENCY AGREEMENT
# WESTERN UNION FINANCIAL SERVICES, INC.

## ATTACHMENT III

## AGENT MERCHANDISING STANDARDS

Subject to any restrictions imposed by local ordinances, Agent must display the Western Union Send/Receive Forms Holder and accompanying forms, a Western Union window decal and Western Union Service Brochures.

In addition, Agent must display at least one item from each of the following categories:

(III) One of the following Western Union interior items:

Triarama hanging sign
Battery Clock
Open/Close sign
Illuminated indoor sign
Banner
Menu Board
Info-Center sign
Transaction Center
Poster Holder
Curb signs

(IV) One of the following Western Union exterior items:

Outdoor back-lit sign
Metal sign
Neon or 12" X 25" indoor facing-out window sign

PBCATT (2000.1)